# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CLYDE W. ATLEY, :

           Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant. :

Case No. 3:09-cv-170

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial

resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI with a protective filing date of February 20, 2004, alleging disability from February 2, 2003, due to Crohn's disease, mental problems, joint pain, neck pain, nerve damage, back pain, and irritable bowel syndrome. (Tr. 66-68; 541-44; 77). Plaintiff's applications were denied initially and on reconsideration. (Tr. 40-43, 45-47; 546-49, 551-53). Administrative Law Judge Thomas McNichols held a hearing and a supplemental hearing, (Tr. 559-79; 580-616), following which he determined that Plaintiff is not disabled. (Tr. 16-31). The Appeals Council denied Plaintiff's request for review, (Tr. 10-12), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff has severe history of Crohn's disease, irritable bowel syndrome, mild degenerative joint disease of the cervical spine, degenerative joint disease of both knees, depression, and anxiety, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, finding 3). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.*, finding 4; Tr. 30, finding 7. He then used section 202.21 of the Grid as a framework for deciding, and coupled with a vocational expert's (VE) testimony, concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, findings 11, 12. Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 31).

The record contains a copy of treating physician Dr. Walsh's office notes dated January, 1994, through December 30, 1999. (Tr. 169-205). Those records reveal that Plaintiff has a long-standing history of intestinal problems. *Id.* In 1994, a limited colonoscopy which Dr. Walsh performed indicated marked erythema, edema, friability, and ulcerations of the transverse colon in

4

a patchy pattern consistent with Crohn's disease. *Id.* Plaintiff was treated with medications and improved intermittently although he would have recurrences of symptoms. *Id.* A March, 1996, colonoscopy which Dr. Walsh performed revealed mild non-specific colitis. *Id.* Plaintiff was hospitalized August 4-8, 1997, for treatment of acute symptomatic exacerbation of Crohn's disease and probable fistulous tract formation contributing to acute severe symptom development. (Tr. 521-37).

The record contains a copy of treating physician Dr. McCarthy's office notes dated January, 1994, to April, 2000. (Tr. 206-57). Those records reveal that Dr. McCarthy treated Plaintiff for various complaints including Crohn's disease, neck pain, back pain, and sinusitis. *Id.*

The transcript contains a copy of treating physician Dr. Manohar's office notes dated May 10, through October 25, 2002. (Tr. 387-92). Those records reveal that Dr. Manohar treated Plaintiff for Crohn's disease. *Id.*

Plaintiff received treatment from gastroenterologist Dr. Dey during the period March 3, 2004, through May 21, 2005. (Tr. 393-98). An October 26, 2004, colonoscopy which Dr. Dey performed revealed a polyp in Plaintiff's proximal rectum which was removed. *Id.* On May 21, 2005, Dr. Dey noted that the cause of Plaintiff's abdominal pain was not known, that he was diagnosed with Crohn's disease in the past, but his last colonoscopy was unremarkable and the biopsy was negative for inflammation. *Id.* Dr. Dey reported that he suspected Plaintiff had irritable bowel syndrome. *Id.*

Plaintiff began experiencing pain in his neck and back in 2003. *See,* Tr. 260. A January 23, 2003, x-ray of Plaintiff's cervical spine revealed mild posterior malalignment of the body of C4 and C5 and minimal intervertebral foraminal encroachment at the C3-4 level on the

5

right. (Tr. 258). An EMG performed on January 28, 2003, was negative. (Tr. 259).

Plaintiff began treating with pain specialist Dr. Demangone in January, 2003, and continued to receive treatment from him through May, 2005. (Tr. 268-89; 399-408). Dr. Demangone treated Plaintiff's neck and abdominal pain with medications. *Id.*

An MRI of Plaintiff's cervical spine which was performed on March 6, 2003, revealed no evidence of disc herniation, root compression, cord compression, or spinal stenosis. (Tr. 282).

Examining physician Dr. Padamadan reported on August 12, 2004, that Plaintiff walked with a limp on the left side not bending his left knee, and wearing a soft brace on the outside of his pants, that Plaintiff complained of injuring his left knee two days ago while mowing the lawn, that he would not bend his knee, but that once the brace was removed he spontaneously was able to bend as normal although on demand he would not bend his knees. (Tr. 297-306). Dr. Padamadan also reported that Plaintiff had a decreased range of motion of his cervical spine, the cervical muscles were tense, the exam of his abdomen was normal, his left upper extremity did not show any muscle atrophy, and that he was able to perform a full squat test. *Id.* Dr. Padamadan noted that Plaintiff's straight leg raising in the supine position was only ten degrees on the left and forty on the right and that in the sitting position, the left lower extremity fell lown like a log without atonia due to a Waddell's sign, and that any injury of the knee or pathology should have had more spasticity of protection rather than flaccidity. *Id.* Dr. Padamadan also noted that Plaintiff's motor, sensory, and reflexes were intact. *Id.* Dr. Padamadan identified Plaintiff's diagnoses as left knee pain with Waddell's signs, left upper extremity weakness not corroborated with physical findings, history of Crohn's disease not treated for the last four months without any peripheral stigmata of Crohn's

disease, low back pain without objective findings, and history of psychiatric illness on medication and under treatment by a psychiatrist. *Id.* Dr. Padamadan opined that Plaintiff was able to sit, stand, and walk and that there were no limitations of physical activities. *Id.*

The record contains a copy of treating physician Dr. Moore's office notes dated February 19, 2004, through September 22, 2006. (Tr. 350-60; 422; 425-35; 495-500). At the time Dr. Moore evaluated Plaintiff in February, 2004, he noted that Plaintiff had a history of Crohn's disease and drug addiction from the abdominal pain related to Crohn's. *Id.* Dr. Moore coordinated Plaintiff's care by the various physicians from whom Plaintiff received treatment. *Id.* On October 28, 2004, Dr. Moore reported that Plaintiff's diagnoses were Crohn's disease, chronic pain, and degenerative arthritis, his condition was good/stable with treatment, that Plaintiff's abilities to stand/walk and sit each were affected by his impairments, that he was not able to lift/carry any weight, and that he was unemployable. *Id.* On June 6, 2005, Dr. Moore reported that Plaintiff had intermittent Crohn's disease, chronic pain syndrome, severe degenerative knee disease and hip disease, degenerative cervical spine disease, and that he had been taking methadone for years. *Id.* Dr. Moore opined that Plaintiff was totally disabled from any and all vocations and was not rehabable [sic]. *Id.*

A May, 2005, MRI of Plaintiff's cervical spine revealed mild disc degenerative changes at C4-5 and C5-6, no focal left-sided findings, and no impingement upon the spinal cord. (Tr. 423).

Plaintiff consulted with orthopedist Dr. Woodard in October, 2006, for complaints of bilateral knee pain. (Tr. 520). Dr. Woodard noted on October 16, 2006, that Plaintiff had not benefitted from physical therapy. *Id.* Dr. Woodard injected Plaintiff's knees with Kenalog and

7

Marcaine and he repeated the injections on March 6, 2007. *Id.*

On January 24, 2007, Dr. Padamadan again examined Plaintiff and reported that Plaintiff walked with a limp on the right side which was significant and prominent on his way in but that on his way out while he was talking about other things, the limping had disappeared.

(Tr. 514-19). Dr. Padamadan also reported that Plaintiff had a normal range of motion of his neck, no atrophy of his neck or shoulder girdle muscles, and that his abdominal examination was normal. *Id.* Dr. Padamadan noted that Plaintiff's upper extremity left-sided weakness which was present in 2004, was gone due to some unknown reason possible Waddell's sign, that he was able to walk on heels and toes, his sensory exam was normal, his muscle strength was normal, and that the stability of his knee joints was normal. *Id.* Dr. Padamadan also noted that Plaintiff's straight leg raising in the supine position was thirty degrees and in the sitting position was eighty degrees, his squat test was normal, and that his neurologic exam was normal. *Id.* Dr. Padamadan identified Plaintiff's diagnoses as prior history of Crohn's disease with inactive status with a normal colonoscopy as of August, 2006; history of bilateral knee pain without any functional impairment, neck pain without objective findings; and history of psychiatric illness under treatment as an outpatient. *Id.* Dr. Padamadan opined that Plaintiff did not have any limitations of physical activities, that he was able to lift and carry up to one hundred pounds continuously, and that he was able to sit, stand, and walk each for eight hours in an eight hour workday and for eight hours without interruption. *Id.*

In addition to his alleged exertional impairments, and as noted above, Plaintiff has a history of depression. The transcript contains a copy of Plaintiff's treatment notes from TCN Behavioral Health dated January, 2004, through September, 2006. (Tr. 309-49; 409-21; 436-70;

501-05). The counselor who initially evaluated him reported that Plaintiff's affect was constricted, his mood was euthymic, his speech and psychomotor activities were normal, his concentration was "OK", and that his memory was intact. *Id.* The counselor also reported that Plaintiff was alert and oriented, his judgment was fair, that he was evasive about his symptoms of depression, and that his current symptoms were controlled by medications. *Id.* The counselor noted that Plaintiff had recently moved to the area and that he would begin seeking work. *Id.* The counselor identified Plaintiff's diagnoses as major depression, recurrent, post traumatic stress disorder, and general anxiety disorder, and he assigned Plaintiff a GAF of 50. *Id.*

Plaintiff continued to receive mental health treatment at TCN. On July 25, 2006, Bobbie Fussichen, an advanced practice nurse who had prescriptive authority and who had been counseling Plaintiff, reported that she first saw Plaintiff in January, 2004, that his diagnoses were major depression, recurrent and moderate, post traumatic stress disorder, and generalized anxiety disorder, and that his GAF was 50. *Id.* That nurse also reported that Plaintiff was not able to perform any work-related mental activities due to his low frustration tolerance, decreased ability to concentrate, and the variance of his symptoms. *Id.* Ms. Fussichen also reported that Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies in concentration, and that he had one or two repeated episodes of deterioration. *Id.*

Examining psychologist Dr. Schulz reported on August 2, 2004, that Plaintiff completed the eighth grade, completed his GED, and that he last worked in the fall of 2003. (Tr. 290-96). Dr. Schulz also reported that Plaintiff's speech was normal, his thought content was normal, his affect was appropriate and congruent, his mood was euthymic, his motor activity was

9

calm, and that his memory was in the adequate range. *Id.* Dr. Schulz noted that Plaintiff was alert and oriented, his judgment was sufficient to make life decisions and conduct his own living arrangements, and that he was functioning in the average range of intelligence. *Id.* Dr. Schulz identified Plaintiff's diagnoses as major depression, anxiety disorder NOS, and personality disorder and he assigned Plaintiff a GAF of 58. *Id.* Dr. Schulz opined that Plaintiff's abilities to relate to others and to understand, remember, and follow instructions were minimally impaired, his ability to maintain attention and concentration to perform simple repetitive tasks was minimally to mildly impaired, and that his ability to withstand the stress of pressures associated with day-to-day work activity was moderately impaired. *Id.*

Plaintiff essentially alleges in his Statement of Errors that the Commissioner erred by rejecting Dr. Moore's opinion and Ms. Fussichen's opinion. (Doc. 6).

In support of his first Error, Plaintiff argues that the Commissioner erred by failing to provide good reasons for rejecting Dr. Moore's opinion.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004),

*quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d

---

[1] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Dr. Moore, who has been Plaintiff's treating physician since February, 2004, reported on several occasions that Plaintiff was not capable of working. *See, e.g.,* Tr. 352-53; 422, 471-75. Judge McNichols rejected Dr. Moore's opinion on the bases that it was not supported by objective findings, not supported by the longitudinal treatment history, apparently based on Plaintiff's subjective allegations, and inconsistent with the other evidence of record. (Tr. 25).

Although Dr. Moore did essentially opine that Plaintiff is totally disabled, his clinical noted contain few, if any, objective findings. Indeed, Dr. Moore's office notes primarily contain Plaintiff's subjective complaints and allegations as well as the findings of Plaintiff's other

physicians. In addition, Dr. Moore did not reference any objective test findings in support of his opinion and his office notes reveal that he mainly monitored Plaintiff's treatment by other physicians and did not himself recommend any specific treatment. Further, Dr. Moore's opinion is inconsistent with the findings and opinions of Dr. Padamadan as well as with the reviewing physicians' opinions. *See.* Tr. 377-82. Moreover, the objective tests of record reveal, at worst, mild findings. Finally, Dr. Moore's opinion is inconsistent with Plaintiff's self-reported activities which include driving, shopping, preparing simple meals, watching television, attending church, performing household chores, doing laundry, playing with and caring for his children, visiting others, doing some yard work, and walking one quarter of a mile daily. (Tr. 109-18; 292; 604).

Under these facts, the Commissioner did not err by failing to give good reasons for rejecting Dr. Moore's opinion or by rejecting that opinion.

Plaintiff argues next that the Commissioner erred by rejecting Ms. Fussichen's opinion.

In rejecting Ms. Fussichen's opinion, Judge McNichols noted that Ms. Fussichen is not an "acceptable medical source", (Tr. 25). In addition, Judge McNichols noted that Ms. Fussichen's opinion was not supported by her objective findings and was inconsistent with the other evidence of record. *Id.*

First, it is true that under the Regulations, Ms. Fussichen is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Moreover, her opinion is not entitled to controlling or even great weight because it is not supported by her clinical notes and is inconsistent with the other evidence of record.

A review of Plaintiff's treatment notes from TNC where Ms. Fussichen counseled

13

Plaintiff reveals that she documented that Plaintiff's symptoms were controlled by medication, that Plaintiff's thought content and process were normal, his affect was full range, his mood euthymic, and his behavior and cognition were "OK". *See, e.g.,* Tr. 309-49; 409-21. Indeed, Ms. Fussichen's treatment notes are primarily recitations of Plaintiff's subjective complaints. In addition, Ms. Fussichen's opinion is inconsistent with Dr. Schulz' findings and conclusions as well as with the reviewing psychologists' opinions. *See,* Tr. 361-76. Finally, Ms. Fussichen's opinion is inconsistent with Plaintiff's self-reported activities. *See, supra.*

Under these facts, the Commissioner did not err by rejecting Ms. Fussichen's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 11, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).